OPINION OF THE COURT
Emily Jane Goodman, J.
On May 13, 1993 this court signed judicial subpoenas duces tecum for the production of certain police records. Copies of these subpoenas had already been served on the District Attorney for New York County, and were served on the New York City Police Department on May 17, 1993. The Police Department now moves to quash those subpoenas on the grounds that (1) the one-day notice requirement of CPLR 2307 was not complied with, and (2) a subpoena is not the proper method for obtaining such records.
THE NOTICE REQUIREMENT OF CPLR 2307
The Police Department claims that the subpoena should be quashed solely on the basis of the defendant’s failure to give the Police Department one-day notice as required by CPLR 2307. In response the defendant asserts that the police had notice via the District Attorney, which had been served the day before the subpoenas were presented to the court, and that in any case it is unavailing to make this objection six months after the subpoenas were served and five months after their return date.
Although full compliance with CPLR 2307 would have been preferable, and while it is arguable that notice to the District Attorney would suffice even though the District Attorney and police are separate entities (see, People v Cortez, 149 Misc 2d 886 [Crim Ct, Kings County 1990] [holding that there is privity between the police department and the District Attor *1007 ney in the conducting of criminal investigations]), it is unnecessary to address that issue.
At this point it is clear that any objection based on CPLR 2307 was waived by the failure of the Police Department to make such objection prior to the return date of the subpoenas. CPLR 2304 requires that a motion to quash a subpoena be made "promptly”. Whatever definition of "promptly” one applies, six months after service of the subpoena clearly does not qualify. In particular, it is futile to make the motion to quash returnable long after the subpoena itself is returnable. (See, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2304:3, at 275; see also, Matter of Santangello v People, 38 NY2d 536, 539.)
A further defect in the motion to quash is that the Police Department has already partially complied with the subpoenas by supplying the defendant with some of the subpoenaed material. In this connection the Court of Appeals has unequivocally stated that "[o]nce there has been compliance with the subpoena * * * a motion to quash or vacate no longer is available.” (Matter of Brunswick Hosp. Ctr. v Hynes, 52 NY2d 333, 339.)
Although service is not in issue, the Legal Bureau of the New York City Police Department claims not to have become aware of the subpoena until that Bureau received a letter from defense counsel in November. This internal sloppiness, if true, is hardly a basis for granting a motion to quash a subpoena served on the New York Police Department six months before.
This court emphasizes its dismay with the cavalier attitude with which the Police Department has treated these subpoenas. A subpoena is not a flexible request, nor is compliance subject to the whim of the recipient. Once signed, a subpoena is an order of the court with a definite date for compliance. Once it is properly served the recipient must comply or make a timely motion to quash. (See, People v Cortez, supra, at 888-889, for an excellent discussion of this issue.) By choosing to ignore an order of the court for six months before taking any action, the Police Department has squandered the opportunity to make any objection or challenge to the subpoenas at issue here.
THE VALIDITY OF THE SUBPOENAS
Even if this motion had been made in a timely manner a *1008 serious legal question would remain, which question has not yet been substantively addressed by our appellate courts, though it has been much litigated in the trial courts of this State, i.e., the validity of defense subpoenas for police reports produced in the routine course of police procedure.
In its motion to quash, the Police Department essentially asserts that the reports at issue here fall into one of two categories. Either they are discoverable pursuant to CPL article 240, in which case their disclosure should take place only in accordance with the provisions of that section, or they are simply not available for disclosure to defense counsel.
As the defense points out in its response, this position is problematic since it ignores the very real possibility that such reports, while relevant and material, were produced by individuals who will not be called as witnesses by the People and thus would not be subject to discovery under Rosario or the CPL. More importantly, the chance that some of the subpoenaed documents will be provided on some other basis does not in and of itself preclude the use of a subpoena.
The right to compulsory process is guaranteed to all criminal defendants by the Sixth and Fourteenth Amendments of the United States Constitution. (See, Pennsylvania v Ritchie, 480 US 39, 56; United States v Nixon, 418 US 683; United States v Burr, 25 Fed Cas 30, 33-34 [No. 14692d 1807].) In this State, the Court of Appeals recently wrote that the purpose of a subpoena is " 'to compel the production of specific documents that are relevant and material to facts at issue in a pending judicial proceeding.’ ” (Matter of Terry D., 81 NY2d 1042, quoting Matter of Constantine v Lito, 157 AD2d 376, 378, affd for reasons stated 77 NY2d 975.)
Moreover, the view urged by the Police Department is inconsistent with the statutory scheme reflected in CPL 610.10 and 610.25 which provide for the issuance of subpoena duces tecum. In particular, CPL 610.25 (2) specifically states that a subpoena may require that the material being subpoenaed be produced prior to the date of trial. As the Practice Commentary notes, the statute provides no exemption for "material as may be found in article 240, the discovery article.” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 610.25, at 270.) The Commentary also states that the purpose of the section is to "foster early availability of evidence to reduce surprise and gamesmanship.” (Ibid.) In a similar vein, the Governor, in his memorandum approving the *1009 amendment of CPL 610.25 to provide for the production of material prior to trial, stated that the effect of the amendment would be to reduce "[t]he element of surprise in criminal trials and its inherent unfairness” and to expedite plea negotiations by giving each side "an increased opportunity to intelligently weigh the strengths and weakness of its case” (Governor’s Mem approving L 1970, chs 412, 413, 1979 McKinney’s Session Laws of NY, at 1801).
These views echo those first expressed by Chief Justice Marshall in United States v Burr (supra). The decision in that case, which involved the efforts of Aaron Burr to subpoena certain papers of the President of the United States, was written by the Chief Justice, in his capacity as the Chief Judge of the Circuit Court for the District of Virginia. The Chief Justice determined that rather than being required to wait until an indictment had been entered, "any person charged with a crime in the courts of the United States has a right, before as well as after indictment, to the process of the court to compel the attendance of his [sic] witnesses.” (Supra, at 33.) It is well established that the subpoena right extends to documents as well as live witnesses. (See, Mackey v United States, 351 F2d 794.)
The above leads me to reject the argument of the Police Department that CPL 240 represents a ceiling for discovery. Rather, I view the discovery provisions as providing "[a] guarantee that a defendant receive a certain minimum level of discovery.” (People v Martinez, 151 Misc 2d 1016, 1017 [Sup Ct, Queens County 1991].) Since the purpose of CPL article 240 was to broaden discovery there is no reason to think that it was meant to limit the exercise by the defendant of the right to compulsory process as provided in the United States Constitution or CPL 610.25. In fact it is clear that the subpoena power extends to items not discoverable under CPL 240. (See, e.g., People v Gissendanner, 48 NY2d 543 [right to subpoena police officer’s personal records]; People v Butchino, 9 AD2d 597 [right to subpoena psychiatric records]; People v Martinez, supra, at 1017.)
Still, the power of the court to issue subpoenas, whether based in the Constitution or statute, is not unlimited. In the context of subpoenas such as those in the instant case they must seek "specific documents” which must be "relevant and material.” (Matter of Terry D., supra, at 1044.) The subpoenas at issue here request specific police documents produced in the course of this case and are not an attempt to make an *1010 unlimited search of the prosecution files. (See, Pennsylvania v Ritchie, supra; People v Cabon, 148 Misc 2d 260 [Crim Ct, NY County 1990].) As to relevance and materiality, there is no question that reports of the sort subpoenaed here are, by their very nature, relevant and material. (See, People v Cabon, supra, at 266.) Indeed the Police Department does not appear to contest the relevance of the documents requested.
Materiality was recently addressed by the Court of Appeals in a case involving the failure of the District Attorney to turn over the report of a police arson investigator. (People v Vilardi, 76 NY2d 67.) In that case the Court declared that evidence is material if there is "a 'reasonable possibility’ that the failure to disclose the exculpatory report contributed to the verdict.” (People v Vilardi, supra, at 77 [emphasis added].) The Court of Appeals of this State specifically declined to adopt the standard of "reasonable probability” of the Supreme Court of the United States. (Supra, citing United States v Bagley, 473 US 667.)
While some courts have taken a contrary view (see, e.g., People v Morrison, 148 Misc 2d 61 [Crim Ct, NY County 1990]), it is clear that "evidence” in this context does not necessarily mean evidence which is admissible in court at trial. (See People v Butchino, 9 AD2d 597, supra [that psychiatric records subpoenaed in an assault case might not be admissible at trial is not a proper basis for a motion to quash].) Thus it should also be clear that there is no requirement that a defendant seeking to subpoena material show that it is trial evidence in the strictest sense but only that the material "might turn out to be relevant and exculpatory.” (People v Gissendanner, 48 NY2d 543, 550, supra.) *
While this court recognizes that a number of trial courts have come to different conclusions on this question, I respectfully decline to adhere to the views they have expressed. (See, e.g., People v Morrison, supra; People v Cammilleri, 123 Misc *1011 2d 851; People v Bolivar, 121 Misc 2d 229.) I instead join in the view expressed in People v Cabon (148 Misc 2d 260, supra) and People v Desai (Crim Ct, NY County, Mar. 23, 1993, Safer-Espinoza, J., docket No. 92N050661). I agree with those courts that the provisions of CPL 610 and the Compulsory Process and Due Process Clauses of the US Constitution are not mere dead letters but represent important protections for the trial rights of the accused.
At the same time this court recognizes that there is a balance to be struck between providing relevant material to the defendant and the prosecution’s legitimate need to withhold certain information. In this regard this court does not choose to adopt the rather complex procedure set forth in People v Cabon (supra, at 272-273). Rather I adopt the approach of the court in Desai (supra), to wit: any appropriate redactions are to be made within 10 days and that any dispute relating to the redactions will be resolved by the court through in camera inspection.
Based on the foregoing the motion to quash the subpoenas duces tecum in this case is denied.

 It should be noted that the requirement of a factual predicate and in camera inspection established in Gissendanner (supra) apply only in the context of a subpoena for confidential records. In this case there is no assertion by the Police Department that the records in question are confidential and therefore no basis for applying the strict procedures outlined in Gissendanner.
Indeed, had the Legislature intended to restrict the court’s power to issue subpoenas it presumably would have done so as it did in the case of the police personnel records at issue in Gissendanner (supra). (See, Civil Rights Law § 50-a.) Nor did the Police Department here ever request an in camera review of the records which is now also waived.